1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                      San Francisco Division

11   GWEN ROWE LEE,                          Case No. 19-cv-06482-LB

12              Plaintiff,

13       v.                                  **ORDER GRANTING THE
                                             DEFENDANTS' PARTIAL MOTION
14   SOUTH OF MARKET HEALTH CENTER,          TO DISMISS**
     and CHARLES RANGE,
15                                           Re: ECF No. 17
              Defendants.
16

17                          **INTRODUCTION**

18       The plaintiff sued the South of Market Health Center and Charles Range, its former CEO, for

19   race-and-gender discrimination and harassment and retaliation for protected conduct, in violation

20   of Title VII of the Civil Rights Act (claims one and two), age discrimination, in violation of the

21   Age Discrimination in Employment Act ("ADEA") (claim three), disability discrimination and

22   failure to accommodate her disability, in violation of the Americans with Disabilities Act

23   ("ADA") (claim four), and intentional and negligent infliction of emotional distress (claim five).[1]

24   The defendants move to dismiss (1) claims one through four as to Mr. Range on the ground that he

25   was the plaintiff's supervisor, not her employer, and thus is not liable under the statutes, and (2)

26

27   _____

28   [1] Compl. – ECF No. 1 at 14–21 (¶¶ 66–105). Citations refer to material in the Electronic Case File
     ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

1   claim five on the ground that the plaintiff did not plead facts plausibly establishing a claim. The

2   court grants the motion to dismiss. First, as the defendants argue, Title VII, the ADEA, and the

3   ADA do not provide causes of action for damages against supervisors or fellow employees.

4   Second, the plaintiff did not plead facts plausibly establishing a claim for intentional or negligent

5   infliction of emotional distress.

6                                        **STATEMENT**

7   **1.  Background**

8        The plaintiff has various degrees, all from U.C. Berkeley: a Bachelor of Science degree in

9   "Biomedical Sciences, Public Health," Master's degrees in mental health and health-services

10  management, hospital-management planning, and regulation, and a Doctorate of Public Health in

11  maternal child health, chronic diseases, and public health.[2] She is an African-American female

12  "over aged 40, with a disability, or perceived disability," and "can and has performed the duties of

13  her position with or without accommodation."[3]

14       The Health Center hired the plaintiff around January 2015 as a Behavioral Healthcare Manager

15  and later promoted her to Director of Behavioral Healthcare Service at the Health Center's

16  LoPrest/Minna site.[4] The plaintiff reported to Marilyn Griffin, another African-American female,

17  and Mr. Range.[5] While under Ms. Griffin's supervision, the plaintiff, "consistent with her position,

18  [] was assigned staff to assist with the administrative support duties required by her position, and

19  the professional services she provided."[6] Ms. Griffin resigned in April 2016.[7] In May or June

20  2016, the Health Center hired Dr. Rosenfeld as its Medical Director, and the plaintiff reported to

21  him.[8] Dr. Rosenfeld and Cristina Sprague, a nurse practitioner, mistreated the plaintiff:

22

23  _____

24  [2] *Id.* at 5 (¶ 24).

     [3] *Id.* (¶ 26).

25  [4] *Id.* at 4 (¶ 23), 5 (¶ 29).

26  [5] *Id.* at 5 (¶ 29).

     [6] *Id.* at 6 (¶ 31).

27  [7] *Id.* at 5 (¶ 29).

28  [8] *Id.* at 6 (¶ 32) (the complaint does not have Dr. Rosenfeld's first name).

United States District Court
Northern District of California

a. DR. ROSENFELD allowed neglect and inappropriate treatment of African American and disabled patients, further exacerbating the medical condition for which they sought treatment;

b. DR. ROSENFELD allowed and promoted a disrespectful and hostile environment to be created for DR. ROWE-LEE with subordinate staff, and medical assistants that made false allegations against DR. ROWE-LEE. DR. ROWE-LEE's request for an investigation was ignored;

c. There was discriminatory treatment in the failure to provide support staff; i.e., a medical assistant, consistent with the assignment of staff to other medical providers, directors, and managers not in the same protected class as Plaintiff;

d. DR. ROWE-LEE witnessed the disparagement of the African American female support staff, TOMIKA THOMPSON by criticizing her appearance and ignoring her capable performance of her job duties as a medical assistant;

e. DR. ROSENFELD refused to consider for employment, or even interview African-Americans for vacancies at SOMHC, the LoPrest site where DR. ROWE-LEE was the Director. However, similarly situated managers such as CRISTINA SPRAGUE were allowed to require DR. ROWE-LEE to work with less skilled and trained staff;

f. Defendant delayed in providing training in the regulatory required appropriate, functioning electronic medical records maintenance programs implemented at SOMHC.

g. Failure to provide appropriate equipment at the site managed by DR. ROWE-LEE to [e]nsure secure file cabinets for the storage of patient records; merging of psychotherapy notes with patient medical records; initially failing to consistently acknowledge DR. ROWE-LEE'S credentials on publicly disseminated documents.

h. Excluding DR. ROWE-LEE from work related training;

i. DR. ROSENFELD referred to DR. ROWE-LEE as "sweetie" in a meeting with a third party, minimizing the professional relationship. Additionally, he demonstrated disdain and disrespect for her position by directing her to deliver keys to a referral source; directing her to stop assisting patients; refusing to allow her to select staff instead requiring she acquiesce to the hiring of staff referred by CRISTINA SPRAGUE.

j. Additionally, CRISTINA SPRAGUE was allowed to direct DR. ROWE-LEE to perform medical assistant, front desk support, and janitorial duties in retaliation for DR. ROWE-LEE'S report that patient records were not being properly maintained to [e]nsure privacy, that patients were being treated inappropriately, and that exam rooms were not clean.[9]

The plaintiff expressed her concerns about discriminatory treatment to Mr. Range in August 2016 and threatened to resign.[10] She "was retained" and was "promoted to the position of Director

_____

[9] *Id.* at 6–7 (¶¶ 33(a)–(j)) (capitalization in original).

[10] *Id.* at 8 (¶ 37).

of Behavioral Health Services in recognition of her expertise and positive future projected for the

Behavioral Health Services program and the LoPrest site."[11] After her report to Mr. Range, Dr.

Rosenfeld and Ms. Sprague continued the hostile treatment:

> a. CRISTINA SPRAGUE and PIA ORTEZ, were permitted to treat DR. ROWE-LEE and her professionally required responsibilities in a dismissive manner;
>
> b. The medical assistants, and front desk staff assigned by CRISTINA SPRAGUE were also dismissive;
>
> c. They refused to follow her instructions, and refused to complete assigned tasks, contacting CRISTINA SPRAGUE or PIA ORTEZ, in response to any direction from DR. ROWELEE.
>
> d. Additionally, the one African American staff member working with DR. ROWE-LEE was unfairly disciplined by DR. ROSENFELD and CRISTINA SPRAGUE although she was initially assigned to work under the supervision of DR. ROWE-LEE. DR. ROWE-LEE is informed and based on that information believes that CRISTINA SPRAGUE and DR. ROSENFELD created false allegations to support their eventual termination of TOMIKA THOMPSON;
>
> e. DR. ROSENFELD and CRISTINA SPRAGUE demonstrated their discriminatory animus by refusing to meet with DR. ROWE-LEE on September 7, 2016, as requested to address the above concerns regarding the continued and increased retaliation and discrimination.[12]

The plaintiff communicated her concerns to Mr. Range in a complaint filed in October 2016.[13]

The plaintiff also alleges that Mr. Range exhibited a discriminatory animus:

> 42. Plaintiff is informed, and based on that information believes that prior to leaving, MARILYN GRIFFIN had provided the barrier from the discriminatory treatment by MR. CHARLES RANGE that did not become apparent until MARILYN GRIFFIN left the employment.
>
> 43. Additionally, prior to leaving employment with Defendant SOMHC, MARILYN GRIFFIN expressed concern about CHARLES RANGE' treatment of ANASTASIA BARNES-PERILLIAT, TOMIKA THOMPSON, and DR. ROWE-LEE, all African American females. Consequently, MARILYN GRIFFIN assigned DR. ROWE-LEE to supervise MS. THOMPSON.
>
> 44. CHARLES RANGE further demonstrated his discriminatory animus against African-American females by negating DR. ROWE-LEE'S management of personnel, negating MS. GRIFFIN'S management decisions despite MS. GRIFFIN'S demonstrated management capability, competence, oversight of SOMHC'S programs, fundraising

---

[11] *Id.*

[12] *Id.* at 9 (¶ 41(a)–(e)) (capitalization in original).

[13] *Id.* at 7 (¶ 34).

United States District Court
Northern District of California

capability, and management of program operations. Upon MS. GRIFFIN'S resignation, Defendant CHARLES RANGE eliminated or otherwise discriminated against all the African American women that previously reported to MS. GRIFFIN.

45. DR. ROWE-LEE is informed and based on that information believes that an additional instance of discriminatory treatment by Defendant CHARLES RANGE is illustrated in his response to a complaint from CRISTINA SPRAGUE about DR. ROSENFELD. Contrary to his response to DR. ROWE-LEE, MR. RANGE protected CRISTINA SPRAGUE after she complained about DR. ROSENFELD, [e]nsured that CRISTINA SPRAGUE was separated from working with DR. ROSENFELD, while he did not provide the same protections for DR. ROWE-LEE.

. . .

47. Also, in February 2017 when DR. ROWE-LEE returned to work, although DR. ROWE-LEE, as a licensed professional and exempt under the Fair Labor Standards Act ("FLSA"), CHARLES RANGE disregarded that status, contrary to the treatment of other similarly situated, non-African American and females, and changed her work hours; required strict adherence despite her professional scheduling, while allowing others to work alternative schedules with flexibility ranging from starting times as early as 7:30 a.m. to 7:00 p.m., and others were allowed to work from home.

. . .

49. Additionally, after returning to work in February 2017, CHARLES RANGE had transferred DR. ROWE-LEE from her duties at the Minna/LoPrest site. She was assigned to work in poorly ventilated, and unclean examination rooms that were not appropriate for providing counseling and health maintenance services to the clientele. CHARLES RANGE continued to deny Plaintiff the ability to manage, coordinate and provide the professional services for which she was retained in refusing to open the Minna/LoPrest site; and, continued to deny her the ability to identify appropriate staff for the positions for the site that would best support the objectives of the program.

. . .

51. On May 15, 2017, CHARLES RANGE sent a letter to DR. ROWE-LEE demonstrating an intention to demote her without cause. In the job description her scope of work was changed, and it also represented a breach in the negotiated contracts of hire signed in December 2014, and August 2016.

. . .

53. CHARLES RANGE spoke in derogatory terms about DR. ROWE-LEE while she was off on medical leave and referred to her as "that damned Dr. Rowe-Lee' in the presence of subordinate staff.

54. Additionally, CHARLES RANGE also attempted to convert her status from exempt by delineating her work hours despite her professional status and no real business need. CHARLES RANGE then began to demonstrate his disdain by referring to DR. ROWE-LEE as "LCSW" or "Social Worker" to intentionally demote and limit her functioning capacity as Director of Integrated Behavioral Health Services.

55. CHARLES RANGE permitted the continuation of the discriminatory treatment by staff towards DR. ROWE-LEE. She was subjected to constant review by CRISTINA

SPRAGUE'S staff such that she felt that she was being stalked by ANGELA LEGASPE. Plaintiff is informed and based on that information believes CRISTINA SPRAGUE directed MS. LEGASPE to read and audit mental/behavioral health files in violation of privacy laws.

56. Subsequently, in or about July 10, 2017, DR. SUSAN BRINER, a Caucasian female, was appointed interim medical director. DR. ROWE-LEE is informed and based on that information believes DR. BRINER, initially, supported MR. RANGE in the retaliation and discrimination.

57. On July 10, 2017, DR. SUSAN BRINER, informed Plaintiff DR. ROWE-LEE that she was going to be reporting to DR. RALPH PETERSON who had been appointed as the Director of the LoPrest location thereby effectively demoting Plaintiff.

58. Additional actions of discrimination, demonstrating the continuing nature of the treatment is evidenced by disparate assignment of a parking space to DR. ROWE-LEE, contrary to the practices with similarly situated staff, not in plaintiff's protected class(es).

59. CHARLES RANGE threatened DR. ROWE-LEE with termination in retaliation for her asserting privacy violations on behalf of patients and clients.

60. CHARLES RANGE humiliated DR. ROWE-LEE in a meeting in the presence of ASA SATARIANO stating that she "was getting old", and that she was blaming her injuries on the job rather than her age. He also told her it was like a "pregnant" woman not informing the employer that she was pregnant before he hired her.

61. Plaintiff DR. ROWE-LEE is informed and based on that information believes that each named DEFENDANT, SOMHC, and CHARLES RANGE exclude African American females from clinical administrative and managerial positions, particularly management and supervisory positions, despite the population it serves.

62. The conduct of discrimination, demeaning treatment, retaliation, and attempt to diminish continued through CHARLES RANGE tenure.

63. The Defendants, and each of them, are directly responsible for allowing the discriminatory treatment and harassment to occur in the workplace. The Defendant employers were aware of the extremely offensive conduct in that Plaintiff DR. ROWE-LEE advised both MARILYN GRIFFIN, initially, and CHARLES RANGE, thereafter, of her concerns regarding discriminatory allocation of staff and resources; nevertheless, Defendant CHARLES RANGE, retaliated, and the discriminatory treatment of Plaintiff DR. ROWE-LEE and other African-American females increased. The employer failed to remedy the harm, and in fact encouraged the treatment by failing to take any reasonable steps to stop the harassment and intimidation, or otherwise remedy the hostile work environment. The plaintiff was harmed as a result of the Defendant employers' agents, employees, and assigns conduct.[14]

---

[14] *Id.* at 10–14 (¶¶ 42–45, 47, 49, 51, 53–63) (capitalization in original).

United States District Court
Northern District of California

### 2. Procedural History

The plaintiff filed her complaint with the Equal Employment Opportunity Commission on August 8, 2017, and amended her complaint in September 2017, November 2017, and March 2018.[15] After concluding its investigation, the Equal Employment Opportunity Commission declined to pursue a claim and issued the notice of the plaintiff's right to sue.[16]

On October 9, 2019, the plaintiff sued the Health Center and Mr. Range for race-and-gender discrimination and harassment and retaliation for protected conduct, in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* (claims one and two), age discrimination in violation of the ADEA, 9 U.S.C. §§ 621–634 (claim three), disability discrimination and failure to accommodate her disability, in violation of the ADA, 42 U.S.C. §§ 12101 *et seq.* (claim four), and intentional and negligent infliction of emotional distress (claim five).[17] The defendants moved to dismiss claims one through four as to Mr. Range and claim five as to both defendants.[18] All parties consented to magistrate-judge jurisdiction.[19] The court held a hearing on May 7, 2020.[20]

### STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to

---

[15] *Id.* at 4 (¶ 16).

[16] Dismissal and Notice of Rights, Ex. 1 to Compl. – ECF No. 1-1 at 2.

[17] Compl. – ECF No. 1 at 14–21 (¶¶ 66–105).

[18] Mot. – ECF No. 17.

[19] Consents – ECF Nos. 7 & 22.

[20] Minute Order – ECF No. 30.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations

2  omitted).

3      To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which

4  when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

5  U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

6  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7  defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a

8  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

9  unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

10  merely consistent with a defendant's liability, it stops short of the line between possibility and

11  plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*,

12  550 U.S. at 557).

13      If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

14  possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th

15  Cir. 2017) (citations and internal quotation marks omitted).

16

17                                    **ANALYSIS**

18      The defendants move to dismiss (1) claims one through four (the Title VII, ADEA, and ADA

19  claims) as to Mr. Range on the ground that he was not the plaintiff's employer and thus cannot be

20  sued for damages, and (2) claim five on the ground that the plaintiff did not plead facts

21  establishing a claim for intentional or negligent infliction of emotional distress.[21] The plaintiff

22  counters that claims one through four may be brought against "individual supervisory employees

23  'in their official capacities' when the employer is a governmental entity as is generally possible

24  under Title 42 USC Section 1983," and she pleaded facts sufficiently for her emotional-distress

25  claims.[22] The court grants the defendants' motion because the plaintiff did not plead viable claims.

26  _____

27  [21] Mot. – ECF No. 17.

   [22] Opp'n – ECF No. 23 at 3–4.

28

### 1. Title VII, ADEA, and ADA Claims

The plaintiff alleges that the Health Center is her employer and that Mr. Range, formerly the CEO, was her supervisor and a Health Center employee.[23] Title VII, the ADEA, and the ADA do not provide a cause of action for damages against supervisors or fellow employees. *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees.") (citation omitted); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993) (Congress imposed liability only on employers under Title VII and the ADEA, not individuals); *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (barring suits against individuals under the ADA); *Grimes v. San Mateo Cnty. Transit Dist.*, No. C 12–06381 LB, 2013 WL 1739470, at *6–7 (N.D. Cal. Apr. 22, 2013).

The plaintiff nonetheless contends that her claims against Mr. Range can proceed because "Title VII[, ADEA, and ADA] claims may be brought against individual supervisory employees 'in their official capacities' when the employer is a governmental entity as is generally possible under Title 42 USC Section 1983."[24] Preliminarily, the plaintiff did not allege that the Health Center is a government entity (and it appears that it is not.)[25] Section § 1983 does not apply.[26] Moreover, she cites no case that supports her argument about state actors. To the contrary, in the state-actor context, courts apply *Miller* and dismiss claims against individual defendants sued in their official capacity. *See, e.g.*, *Mack v. California Dep't of Corrs. and Rehab.*, No. 1:15-cv-1600-JLT, 2018 WL 932235, at *12 (E.D. Cal. Feb. 16, 2017) (Title VII claims); *Ames v. City of Novato*, No. 16-cv-02590-JST, 2016 WL 6024587, at *4 (N.D. Cal. Oct. 14, 2016) (same); *see Williams v. Lorenz*, No. 15-cv-04494-BLF, 2018 WL 5816180, at * 2 (N.D. Cal. Nov. 5, 2018) (same.

---

[23] Compl. – ECF No. 1 at 2 (¶¶ 3–4).

[24] Opp'n – ECF No. 23 at 3.

[25] Reply – ECF No. 25 at 3.

[26] *See* Compl. – ECF No. 1 at 2 (¶ 2) (the Health Center "is a not for profit community health center.").

1    In sum, there are no viable claims against Mr. Range under Title VII, the ADEA, or the ADA.

2    *Miller*, 991 F.2d at 587; *Walsh*, 471 F.3d at 1037. At the hearing, the plaintiff conceded the

3    argument. The court dismisses claims one through four against Mr. Range with prejudice.

### 2.  Infliction-of-Emotional-Distress Claim

The plaintiff claims intentional and negligent infliction of emotional distress.[27] The court

grants the defendants' motion to dismiss because the plaintiff does not plausibly plead a claim.

In California, "[a] cause of action for intentional infliction of emotional distress exists when

there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or

reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

distress by the defendant's outrageous conduct." *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215

(2011). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that

usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

Negligent infliction of emotional distress is a form of the tort of negligence and has the

following elements: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Huggins v. Longs*

*Drug Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993); *see Burgess v. Superior Court*, 2 Cal. 4th

1064, 1072 (1992) (elements for negligent infliction of emotional distress include (1) the

defendant engaged in negligent conduct involving the usual issues of duty and breach, (2) the

plaintiff suffered serious emotional distress, and (3) the defendant's conduct was a substantial

factor in causing the emotional distress suffered by plaintiff). A duty to the plaintiff may be

"imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter*

*v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) (citing *Marlene F. v. Affiliated*

*Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 590 (1989)).

Under California law, there is no duty to avoid negligently causing emotional distress to

another. *Id.* at 984.

[27] *Id.* at 20–21 (¶¶ 98–105).

United States District Court
Northern District of California

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.

*Id.* at 985. Therefore, a plaintiff must allege a duty owed the plaintiff regarding her emotional condition or allege that her emotional distress arises out of the defendant's breach of some other legal duty. *See Brahmana v. Lembo*, No. C–09–00106 RMW, 2010 WL 290490, at *2 (N.D. Cal. Jan. 15, 2010). And in a case like this, which involves "direct victim" liability, there must be a duty "that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between" the parties. *Marlene*, 48 Cal. 3d at 590.

The defendants moved to dismiss the claim on two grounds: (1) the plaintiff did not plead facts establishing that they owed her a duty, and thus did not plead a claim of negligent infliction of emotional distress claim; and (2) her allegations about Mr. Range's derogatory comments — such as his comments about her age and injuries and also by referring to her as "that damned Dr. Rowe-Lee" — do not rise to the level of extreme and outrageous conduct sufficient to support a claim of intentional infliction of emotional distress.[28] The court grants the motion on both grounds.

The plaintiff's entire argument is that paragraphs 22 to 65 of the complaint sufficiently describe the duty owed to her and the extent of the hostile work environment.[29] They do not. The plaintiff did not plausibly plead any facts about a duty (and the court cannot see how she can, for the reasons that the defendants advance). Plus, the plaintiff's claim is about intentional conduct. *See, e.g.*, *McNaboe v. Safeway Inc.*, No. 13-CV-04174-SI, 2016 WL 80553, at *6 (N.D. Cal. Jan. 7, 2016) (act of termination is intentional, not negligent) (citing *Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990)).

As for her claim of intentional infliction of emotional distress, the plaintiff alleges that Mr. Range spoke her in "derogatory terms" by referring to her as "that damned Dr. Rowe-Lee"[30] and

---

[28] Mot. – ECF No. 17 at 9–13.

[29] Opp'n – ECF No. 23 at 4.

[30] Compl. – ECF No. 1 at 12 (¶ 53).

1      "humiliated" her by claiming saying she "was 'was getting old,' and that she was blaming her

2      injuries on the job rather than her age."[31]

3          First, the comments — such as the age-related comments — may be evidence for the

4      substantive claims, but they are isolated instances that do not amount to the extreme conduct

5      needed to plead a stand-alone claim of intentional infliction of emotional distress. *Kelley*, 196 Cal.

6      App. 4th at 215.

7          Second, to the extent that the plaintiff challenges evaluations of her performance, an

8      employer's criticizing, disciplining, and firing an employee (for example) are not "outrageous"

9      acts establishing a claim. *Janken v. GM Hughes Elect*, 46 Cal. App. 4th 55, 80 (1996).

10
11
12
13
> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

14    *Id.* The plaintiff challenges conduct that includes her employer's decisions allocating support staff,

15      investigating staff complaints, providing training, and providing equipment.[32] These activities are

16      "personnel management decisions" that do not establish a claim of an intentional infliction of

17      emotional distress claim. *Janken*, 46 Cal. App. 4th at 80; *see also id.* at 64–65 (characterizing

18      "hiring and firing, job or project assignments, office or work station assignments, promotion or

19      demotion, performance evaluations, the provision of support, the assignment or non-assignment of

20      supervisory functions, deciding who will and who will not attend meetings, deciding who will be

21      laid off, and the like" as "personnel management actions").

22          At the hearing, the plaintiff conceded that she did not have a viable claim of negligent

23      infliction of emotional distress and could not cure the deficiencies by amendment. She asked only

24      to amend her claim of intentional infliction of emotional distress. The court dismisses claim five

25

26

27    [31] *Id.* at 13 (¶ 60).

28    [32] *Id.* at 6–14 (¶¶ 33–65).

United States District Court
Northern District of California

with prejudice on the claim of negligent infliction of emotional distress and without prejudice and with leave to amend the claim of intentional infliction of emotional distress.

## CONCLUSION

The court grants the motion to dismiss and dismisses claims one through four against Mr. Range with prejudice, claim five with prejudice as to the claim of negligent infliction of emotional distress, and claim five without prejudice and with leave to amend the claim of intentional infliction of emotional distress.

The plaintiff may file an amended complaint by May 21, 2020. If she does, she must file as an attachment a blackline of her amended complaint against the original complaint.

This disposes of ECF No. 17.

**IT IS SO ORDERED.**

Dated: May 7, 2020

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California